UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KAREN D. BLOUNT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JOHN E. POTTER, )<br>POSTMASTER GENERAL )<br>)<br>Defendant. ) | Case No.  4:05cv00211 SNL |

### ORDER

Plaintiff, a former postal employee, filed this employment discrimination action against the Postal Service *pro se*, alleging that Defendant violated the Rehabilitation Act of 1973 by failing to make reasonable accommodations for her disability. A bench trial was held on December 5, 2005, and the Court is ready to render its opinion.

### BACKGROUND

Plaintiff Karen Blount is a former employee of the United States Postal Service. She began as a casual mail handler in 1986, and became a full time letter carrier in 1987. While employed, Plaintiff sustained two job related injuries – a lumbar strain in 1988 and an ankle fracture in 1991. As a result of these injuries and other medical conditions,[1] Plaintiff was physically unable to continue working as a letter carrier. In 1994, the Postal Service created a modified position for Plaintiff that was more in keeping with her physical abilities. Plaintiff worked as a Modified General Clerk in the

---

[1] Plaintiff suffers from bone disease, piriformis, arthritis, diabetes, and high blood pressure.

1

Personnel Department until 1997, at which point she was transferred to the Jennings Branch Post Office.

At the Jennings Branch, Plaintiff did computer work, clock rings, formatted letters, filed documents, and answered the phones. Postal Service doctors put the following physical restrictions on Plaintiff's work duties: sitting up to six hours per day; walking up to one hour per day, intermittently; standing up to two hours per day, intermittently; lifting no more than ten pounds for less than one hour, intermittently; bending minimum to none; no squatting; no climbing; no kneeling and minimum to no twisting. Plaintiff states that her duties were in keeping with these physical restrictions.

In January of 1999 Mary Washington became the manager of the Jennings Post office. Washington found Plaintiff's position to be lacking in structure and made significant changes to remedy this problem. Plaintiff's new duties were as follows:

| Time | Duties |
| --- | --- |
| 6:00-7:30 | Collect and sort Post Office Box mail into P.O. Boxes and answer phone |
| 7:30-8:30 | Collect, sort, count and post Postage Due and business Reply accounts, and answer phones |
| 8:30-8:40 | Morning Break |
| 8:40-9:00 | Continue to collect, sort, count and post Postage Due and business Reply accounts, and answer phone |
| 9:00-10:00 | Collect, write second notices and returns of certified mail, answer phone, assist customers with passport applications at counter |
| 10:00-11:00 | Lunch |
| 11:00-1:00 | Continue certified mail, answer phone, customer assistance |
| 1:00-1:10 | Afternoon break |
| 1:10-3:00 | Continue certified mail, answer phone, customer assistance, clear carriers of accountable mail if necessary, file PS Form 3849's, other duties as assigned by supervisor within physical limitations. |

Plaintiff complains that these new duties did not comport with the physical restrictions set forth by the Postal Service doctors. These duties required that she stand for more than two hours per day, lift items that weighed over ten pounds, and bend or squat down occasionally. Plaintiff's health began to decline, which in turn caused Plaintiff to require more sick days. She believes that her new work schedule caused this decline.

Early in 1999, Plaintiff contacted the Equal Employment Opportunity Commission (EEOC), complaining of race, sex, age and disability discrimination. She and Washington attended mediation in Spring of 1999, and reached a settlement. Plaintiff never filed a formal complaint in this matter. The following year, a supervisor at the Jennings Branch Post Office issued a Letter of Warning to Plaintiff, citing poor attendance and failure to maintain a regular work schedule. Plaintiff had eleven unexcused absences between June 12, 2000 and September 5, 2000, almost all of which were classified as sick leave. No disciplinary action was taken. The letter served to notify Plaintiff that if her attendance did not improve, disciplinary action would be forthcoming.

On February 9, 2001, Plaintiff left the postal service. She was granted disability retirement in November of the same year. Plaintiff filed a formal complaint with the EEOC on April 6, 2001. The complaint disputed the validity of the Letter of Warning, claiming it was issued for retaliatory and discriminatory purposes. Plaintiff requested and received a hearing with the EEOC, and the case went before Judge Niehoff in April of 2004. Plaintiff was represented by an attorney at that time. During the administrative process, Plaintiff complained that her absences were treated differently from other employees because she was a disabled African-American woman. She stated that she felt harassed by management because they would not accept her medical documentation unless it was

accompanied with detailed information. Plaintiff also argued that the Postal Service failed to accommodate her medical needs. Finally, Plaintiff claimed that she was retaliated against for filing an EEOC complaint in 1999.

The court ruled in favor of the Postal Service, finding that Plaintiff was legally disabled, but was not treated differently from other employees who were not African-American, female, and/or disabled. Judge Niehoff also decided that the Postal Service was not aware that Plaintiff was working outside of her restrictions, and therefore the Letter of Warning was not caused by Defendant's failure to accommodate Plaintiff's disability. On the issue of retaliation, the court found that a warning letter issued fifteen months after EEOC activity is too distant in time to create an inference of retaliation. Plaintiff appealed and the decision was affirmed.

On February 4, 2005, Plaintiff filed suit in this Court, seeking redress for harassment, constructive discharge, disparate treatment, failure to accommodate, and retaliation. Defendant filed a Motion for Summary Judgment, which the Court granted in part and denied in part. Plaintiff's claims of harassment, constructive discharge, disparate treatment, and retaliation were dismissed, but her charge of failure to make reasonable accommodations remained viable. The Court heard arguments from both parties on December 5, 2005, and is ready to render its decision.

## DISCUSSION

Plaintiff claims that Defendant violated the Rehabilitation Act by failing to make reasonable accommodations for her disability.[2] The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, ... be subjected to discrimination ... under any program or activity conducted by ... the United States Postal Service." 29 U.S.C. § 794(a). An entity discriminates against a disabled person if it fails to "make reasonable accommodation to the known physical ... limitations of an otherwise qualified ... employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. 1630.9(a). A defendant need not have discriminatory intent to violate this portion of the Act. "Rather, discrimination occurs when the employer fails to abide by a legally imposed duty. The known disability triggers the duty to reasonably accommodate." *Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004).

A disability is "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 948-49 (8th Cir.1999) (quoting 42 U.S.C. § 12102(2)). "Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working, as well as sitting, standing, lifting, and reaching." *Cooper v. Olin Corp.*, 246 F.3d 1083, 1088 (8th Cir.2001) (internal citation omitted). Plaintiff's ability to walk, sit, stand, lift, and reach are significantly impaired. She suffers from severe diabetes, bone disease, piriformis, arthritis, and high blood pressure. These conditions have had a significant and long-term impact on Plaintiff's life. Plaintiff is clearly disabled within the meaning of the statute.

---

[2]Rehabilitation Act cases are analyzed under the same framework as those under the Americans with Disabilities Act. Therefore, the caselaw can be used interchangeably. *See Allison v. Dep't of Corrections*, 94 F.3d 494, 497 (8th Cir. 1996).

Plaintiff has three main complaints surrounding Defendant's failure to accommodate: her supervisors assigned duties outside of her physical restrictions, her lunch hour did not correspond with her diabetic needs, and her supervisors failed to excuse the additional sick days she required. The Court will address each of these complaints in turn.

Plaintiff first argues that she was required to perform tasks outside of her physical limitations. But Plaintiff gave conflicting testimony before this Court, stating that Washington told Plaintiff not to perform any tasks outside of her physical restrictions. Therefore, her supervisors did not require that she perform tasks above and beyond her physical abilities. If Plaintiff chose to perform tasks that were beyond her capabilities, she did so of her own accord. This is not an example of an employer's failure to accommodate.

Plaintiff next complains that her lunch hour should have been one hour later to accommodate her diabetic needs. Plaintiff testified that this problem was exacerbated by the fact that she was prohibited from keeping food at her desk to regulate her blood sugar. Plaintiff testified that she approached Washington with these problems, but that Washington refused to help. Washington explained that employees were allowed to keep soda or hard candies on their desks. Other foods were restricted in an effort to curtail an insect infestation. Washington further testified that Plaintiff never requested a change in her lunch schedule, but had she been aware of Plaintiff's problem, she would have made the required adjustments. The Court finds Washington's testimony credible. Washington, like Plaintiff, is a diabetic. The Court did not find Washington so callous as to ignore a fellow diabetic's blood sugar requirements. Because Plaintiff did not make her supervisors aware

that she had problems with her lunch hour, they did not know she needed to be accommodated. Disabled employees must make employers aware of their needs.

Plaintiff's final complaint is that Defendant failed to excuse the additional sick days required to care for her physical conditions. From the evidence adduced, Plaintiff's salary was not docked for any of her sick days. Because of this, the Court finds that Plaintiff suffered no harm. She was fully accommodated. Plaintiff did not show that the Postal Service failed to accommodate her needs, therefore she has not met her burden of proof.

## CONCLUSION

Plaintiff has not made a *prima facie* case of failure to accommodate under the Rehabilitation Act. The Court finds that the Postal Service made accommodations for all of Plaintiff's disabilities. Although the Court has sympathy for Plaintiff because of her health problems, the Postal Service has fulfilled its duty to reasonably accommodate her disabilities. Plaintiff's complaint is dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Complaint is **DISMISSED**.

**IT IS FURTHER ORDERED** that all remaining motions are **DENIED** as moot.

Dated this 10th day of February, 2006.

/s/ Stephen N. Limbaugh
_____
SENIOR UNITED STATES DISTRICT JUDGE